# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### AUGUST 23, 2011 Session

## MICHAEL LANCASTER v. FERRELL PAVING, INC., ET AL. v. EVEREST INDEMNITY INSURANCE COMPANY

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-002187-08     Donna M. Fields, Judge

---

### No. W2010-02632-COA-R3-CV - Filed September 20, 2011

---

This appeal involves a dispute over whether the appellant was provided with coverage under an additional insured endorsement to an insurance policy. The trial court granted summary judgment to the insurer, finding no coverage. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

James B. Summers, Heather W. Fletcher, Jessica A. Benton, Memphis, Tennessee, for the appellant, Ferrell Paving, Inc.

Parks T. Chastain, Gordon C. Aulgur, Nashville, Tennessee, for the appellee, Everest Indemnity Insurance Company

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Ferrell Paving, Inc. ("Ferrell") utilizes a warehouse located at 1993 Chelsea Avenue in Memphis for storage of its construction materials. For many years, Ferrell has employed Imperial Guard Service, Inc. ("Imperial Guard") to provide security guard services at various locations owned by it and related entities, including the Chelsea Avenue warehouse. On May 10, 2007, one of Imperial Guard's security guards, Michael Lancaster, was shot by intruders while he was on duty and providing services for Ferrell at the Chelsea Avenue warehouse. Mr. Lancaster sued Ferrell, alleging that Ferrell was negligent in failing to protect him from foreseeable criminal attacks.

Ferrell believed that it was covered as an additional insured under Imperial Guard's commercial general liability insurance policy, so it tendered its defense to Imperial Guard's insurer, Everest Indemnity Insurance Company ("Insurer"). After being notified that its tender of defense was rejected, Ferrell filed a third party complaint against Insurer, asking the court to declare the rights and obligations of the parties and to require Insurer to defend Ferrell in the suit filed by Mr. Lancaster. Insurer filed a motion for summary judgment, contending that Ferrell did not qualify as an additional insured under the policy, and even if it did, the policy did not provide coverage for the alleged negligence of an additional insured. The trial court ultimately concluded that Ferrell was an additional insured under the policy, but that it was not provided with coverage where it was allegedly negligent. Accordingly, the trial court granted summary judgment to Insurer. Ferrell timely filed a notice of appeal.[1]

## II. ISSUES PRESENTED

On appeal, Ferrell contends that the trial court erred in granting summary judgment to Insurer on the basis that Ferrell was not entitled to coverage with regard to allegations of its own negligence. Insurer disputes this contention but also claims that summary judgment was proper on the alternative ground that Ferrell did not qualify as an additional insured in the first place. For the following reasons, we reverse the trial court's order granting summary judgment to Insurer and remand for further proceedings.

---

[1] The trial court's order granting summary judgment to Insurer was made final pursuant to Tennessee Rule of Civil Procedure 54.02.

## III. STANDARD OF REVIEW

"Issues regarding an insurer's duty to defend are matters of law and may be resolved by summary judgment when there are no genuine issues as to any material fact." ***Travelers Indem. Co. of America v. Moore & Assocs., Inc.***, 216 S.W.3d 302, 305 (Tenn. 2007) (citing *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998)). Whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. ***Id.*** (citing *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994)). "[T]he insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." ***Id.***

In general, courts should construe insurance policies in the same manner as any other contract. ***American Justice Ins. Reciprocal v. Hutchison***, 15 S.W.3d 811, 814 (Tenn. 2000). "An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." ***Naifeh v. Valley Forge Life Ins. Co.***, 204 S.W.3d 758, 768 (Tenn. 2006) (citing *Parker v. Provident Life & Acc. Ins. Co.*, 582 S.W.2d 380, 383 (Tenn. 1979)). The policy language must be taken and understood in its plain, ordinary, and popular sense. ***Hutchison***, 15 S.W.3d at 814. We review a trial court's interpretation of contract language de novo with no presumption of correctness. ***Moore & Assocs., Inc.***, 216 S.W.3d at 305.

## IV. DISCUSSION

Imperial Guard's commercial general liability insurance policy included the following endorsement regarding additional insureds:

**A. Section II – Who is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

The aforementioned Schedule did not name a specific person or organization, but instead stated, "BLANKET WHERE REQUIRED BY CONTRACT."[2]

Imperial Guard and Ferrell had entered into a written contract entitled "Security Service Agreement" in 2003, and the parties were still operating under the terms of that contract at the time of the shooting in 2007. The Security Service Agreement did not

---

[2] Additional insured coverage may be provided pursuant to a specific endorsement expressly naming the individual or entity as an additional insured on the policy, or by a blanket additional insured endorsement providing coverage to a limited category of individuals or entities without having to be expressly identified. 9 Lee R. Russ & Thomas F. Segalla, *Couch on Ins.* § 126:7 (3d ed. 2011).

mention additional insured status.  However, it is undisputed that at some point, a representative of Ferrell, Richard Davis, made an oral request to Imperial Guard's First Vice President of Client Relations, Roger Talerico, to have Ferrell added to Imperial Guard's insurance policy as an additional insured.  Mr. Talerico then informed Imperial Guard's owner, R.Q. Brewer, of the request, and Mr. Brewer or someone acting on his behalf contacted Imperial Guard's insurance broker and requested that Ferrell be added to its policy as an additional insured.  The insurance broker then issued a "Certificate of Liability Insurance," which listed Ferrell Paving as the "certificate holder" and provided, "Certificate holder is named an additional insured."  Despite these facts, Insurer insists that Ferrell does not qualify as an additional insured based upon two separate sections of the additional insured endorsement.[3]

## A.  "Where Required by Contract"

Insurer first argues that, according to the language of the policy, specifically, the endorsement quoted above, Ferrell cannot qualify as an additional insured because its status as an additional insured was not "required by contract."[4]  Insurer correctly notes that the Security Service Agreement executed in 2003 did not require that Ferrell be added as an additional insured to Imperial Guard's policy.  Insurer then argues that Ferrell's oral "request" to be added as an additional insured does not rise to the level of an enforceable contractual obligation that would satisfy the endorsement's requirement that additional insured status be "required by contract."  Insurer cites several alternative grounds in support of its argument.

First, Insurer points out that the Security Service Agreement contained the following provision:
> [Ferrell] agrees and understands that this agreement constitutes the entire agreement and no verbal agreements can be made part of this agreement.  It is agreed and understood that this contract supersedes all other agreements or contracts.

It is undisputed that Imperial Guard and Ferrell subsequently modified the terms of the Security Services Agreement on several occasions through the use of written account

---

[3] Insurer points out that the "Certificate of Liability Insurance" issued by the insurance broker states that it "is issued as a matter of information only and confers no rights upon the certificate holder," as the certificate "does not amend, extend or alter the coverage afforded by the policies below."

[4] As noted above, the Schedule on the additional insured endorsement did not name a specific person or organization, but instead stated, "BLANKET WHERE REQUIRED BY CONTRACT."

modification forms, and that no written document was executed regarding the issue of additional insured coverage. Thus, Insurer argues that the parties' oral agreement regarding additional insured coverage does not rise to the level of a contractual obligation.

"'A modification to a contract is a change to one or more contract terms which introduces new elements into the details of the contract, or cancels some of them, but leaves the general purpose and effect of the contract undisturbed.'" ***Constr. Crane & Tractor, Inc. v. Wirtgen Am., Inc.***, No. M2009-01131-COA-R3-CV, 2010 WL 1172224, at \*10 (Tenn. Ct. App. Mar. 24, 2010) (quoting *Interstate Marketing Corp. v. Equipment Servs., Inc.*, No. M2005-00208-COA-R3-CV, 2006 WL 1547867, at \*4 (Tenn. Ct. App. Jun. 6, 2006)). After a written contract is made, it may be modified by the express words of the parties in writing or by parol, where both parties consent to such modifications. ***In re Estate of Nelson***, No. W2006-00030-COA-R3-CV, 2007 WL 851265, at \*18 (Tenn. Ct. App. Mar. 22, 2007) (citing *Galbreath v. Harris*, 811 S.W.2d 88, 91-92 (Tenn. Ct. App. 1990)). "Generally, Tennessee courts follow the rule that 'allows contracts to be orally modified even if the contracts specifically state that the contract can only be modified in writing.'" ***Markow v. Pollock***, No. M2008-01720-COA-R3-CV, 2009 WL 4980264, at \*8 (Tenn. Ct. App. E.S. Dec. 22, 2009) (quoting *Moulds v. James F. Proctor, D.D.S., P.A.*, 1991 WL 137577, at \*3 (Tenn. Ct. App. W.S. July 29, 1991)). "Even where the written contract prohibits oral modifications of the agreement, oral alterations will still be given effect if otherwise valid, as 'men cannot tie their hands or bind their wills so as to disable them from making any contract allowed by law, and in any mode in which it may be entered into.'" ***Estate of Nelson***, 2007 WL 851265, at \*18 (quoting *Co-Operative Stores Co. v. U.S. Fid. Guar. Co.*, 195 S.W. 177, 180 (Tenn. 1917)). "A party's agreement to a modification need not be express, but may be implied from a course of conduct; this is true even where the agreement expressly specifies, as in this case, that the parties may only modify the agreement in writing." ***Constr. Crane & Tractor, Inc.***, 2010 WL 1172224, at \*10 (citing *Galbreath*, 811 S.W.2d at 91; *Cooperative Stores Co.*, 195 S.W. at 180).

Here, it is undisputed that Ferrell's representative orally requested that Ferrell be added as an additional insured under Imperial Guard's policy. In response, Imperial Guard's owner agreed to the request and instructed Imperial Guard's insurance broker to add Ferrell as an additional insured under the policy.[5] Thus, we find that both parties consented to the oral modification of the Security Service Agreement and both parties waived the requirement that contractual modifications must be in writing.

---

[5] Mr. Talerico, who was Imperial Guard's First Vice President of Client Operations, testified that Imperial Guard did not utilize account modification forms when a customer requested to be added to its policy as an additional insured.

Next, Insurer argues that the parties' oral agreement is insufficient to give rise to a contractual obligation because it was not supported by sufficient consideration. The modification of a contract does require consideration to support it. *Markow*, 2009 WL 4980264, at *8. "In general, under the common law, the modification of an existing agreement must be supported by reciprocal consideration, that is, each party must gain or lose something by the change." *GuestHouse Intern., LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 190 (Tenn. Ct. App. 2010). However, "it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration." *Id.* (citing *Walker v. First State Bank*, 849 S.W.2d 337, 342 (Tenn. Ct. App. 1992)).

We find that sufficient consideration existed in this case. The Security Service Agreement provided that either party could terminate the agreement upon thirty days notice. Mr. Talerico was Imperial Guard's First Vice President of Client Operations, who had discussed the issue of additional insured status with Mr. Davis from Ferrell. Mr. Telarico testified that Ferrell "required" that it be added as an additional insured to Imperial Guard's insurance policy as a condition of continuing to do business with Imperial, and that he passed Ferrell's request for additional insured coverage along to Mr. Brewer for approval. It is not clear whether Mr. Brewer was made aware that Ferrell was "requiring" that it be added to the policy as a condition of doing business, but Mr. Brewer clearly recognized that he risked losing Ferrell's business if he declined the request, so he agreed to have Ferrell added to its policy without further discussion of the issue.[6] Thus, we conclude that both parties received a benefit under the circumstances to constitute sufficient consideration for the oral modification of the contract. *Cf.* *GuestHouse Intern., LLC*, 330 S.W.3d at 192 (recognizing that the parties' "ongoing contractual relationship and the continued exchange of mutual benefits was of value to both [parties]" and constituted consideration to support modifications of their original contract).

Finally, Insurer cites the statute of frauds and the parol evidence rule as support for its assertion that the parties' oral modification of the Security Service Agreement is unenforceable. However, a third party cannot object to enforcement of a contract by raising

---

[6] When Mr. Brewer was asked during his deposition whether it was his understanding that he had to add Ferrell to the policy in order to continue doing business with Ferrell, he stated:

It was never questioned. They didn't threaten us or anything. We don't really fail to respond on additional-insured request (sic). We don't promote it or talk about it, but if they ask for it, we usually try to give it to them. We always do.

When asked whether he had the right to refuse a client's request to be added as an additional insured, Mr. Brewer said, "Well, if I want to give up their business, I do."

-6-

the statute of frauds. ***Anderson v. Hacks Crossing Partners***, 3 S.W.3d 482, 486 (Tenn. Ct. App. 1999) (citing *Bailey v. Henry*, 143 S.W. 1124, 1127 (Tenn. 1912); *Brakefield v. Anderson*, 10 S.W. 360, 362 (Tenn. 1889); *Culwell v. Culwell*, 133 S.W.2d 1009, 1012 (Tenn. Ct. App. 1939)).  Similarly, the parol evidence rule "'applies only between the parties to the written contract and strangers cannot raise the question of the admissibility of parol evidence to vary a written contract.'" ***Consumers Ins. USA v. Smith***, No. E2002-00724-COA-R3-CV, 2002 WL 31863300, at *6 (Tenn. Ct. App. Dec. 23, 2002) (quoting *Evans v. Tillett Bros. Constr. Co.*, 545 S.W.2d 8, 12 (Tenn. Ct. App. 1976)).  Therefore, we conclude that Insurer cannot attack the parties' oral agreement by raising either the parol evidence rule or the statute of frauds.

In sum, we find that Imperial Guard and Ferrell mutually consented to an oral modification of their contract to require that Ferrell be named as an additional insured on Imperial Guard's insurance policy.  The oral modification was supported by sufficient consideration, and it was not rendered unenforceable despite the original contract's provision regarding verbal agreements.  The additional insured endorsement at issue stated that Insurer would provide additional insured coverage "where required by contract."  The endorsement does not necessarily require a *written* contract, and we will not read such a limitation into the endorsement, as the policy language must be taken and understood in its plain, ordinary, and popular sense. ***Hutchison***, 15 S.W.3d at 814.  Consequently, we conclude that Imperial Guard's addition of Ferrell as an additional insured was "required by contract" within the meaning of the additional insured endorsement.  Insurer's arguments to the contrary are without merit.

## B.    The Extent of Coverage for an Additional Insured

The additional insured endorsement to Imperial Guard's policy provided that an additional insured would have coverage "only with respect to liability arising out of your ongoing operations performed for that insured."  In other words, Ferrell would have coverage as an additional insured "only with respect to liability arising out of [Imperial Guard's] ongoing operations performed for [Ferrell]."  Ferrell argues that the shooting of Mr. Lancaster clearly arose out of Imperial Guard's ongoing operations performed for Ferrell, under a plain reading of the policy language.  Insurer, on the other hand, interprets this provision to mean that Ferrell would be provided with coverage only when its liability *vicariously* arose out of the ongoing operations of Imperial Guard, such that Ferrell would not be covered for its own negligence.  Because Mr. Lancaster's complaint alleged that Ferrell's liability for his injuries arose out of Ferrell's negligent acts rather than negligent acts of Imperial Guard, Insurer claims that there is no additional insured coverage in this instance.

Insurer asks us to read the additional insured provision at issue in this case as providing coverage only in cases of vicarious liability because, according to Insurer, that is the very "purpose" of an additional insured provision – to protect an additional insured against liability caused by the acts of the named insured. We rejected a comparable argument in ***Georgia-Pacific LLC v. Swift Transp. Corp.***, No. W2008-00344-COA-R3-CV, 2008 WL 4380885, at *5 (Tenn. Ct. App. Sept. 29, 2008), which involved Georgia law, where a party argued that the very "point" or "idea" of additional insured coverage is to protect against your own negligence. We declined to hold that additional insured provisions necessarily provide such coverage, explaining:

> There are numerous types of additional insureds under commercial general liability policies. 1 David L. Leitner et al., *Law and Prac. of Ins. Coverage Litig.* § 4:11 (2008); see also David R. Hendrick, *Insurance Law: Understanding the Basics Regarding " Additional Insureds"* 690 PLI/Lit 591, 618-21 (2003). Although in some circumstances, the parties may provide insurance against the additional insured's own negligence, that is not always the case. An additional insured's coverage may be limited to instances where the additional insured is vicariously liable for the wrongs of the named insured.

***Id.*** Insurance policies can contain any one of a number of differently worded provisions regarding additional insured status. 3 Allan D. Windt, *Insurance Claims &Disputes 5th* § 11:30. Therefore, we will look to the particular language of the policy at issue in order to determine the scope of coverage in this case, rather than accepting Insurer's characterization of the "purpose" of such provisions.

Both parties agree that Tennessee appellate courts have not reviewed the language or meaning of an additional insured endorsement like the one in this case, which, again, provided coverage "only with respect to liability arising out of your ongoing operations performed for [the additional] insured." However, when construing an insurance policy's use of the phrase "arising out of the ownership, maintenance or use" of an automobile, our Supreme Court has explained that "[t]he term 'arising out of the use' in liability policies has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'" ***Travelers Ins. Co. v. Aetna Cas. & Sur. Co.***, 491 S.W.2d 363, 365 (Tenn. 1973). The phrase "arising out of the use" requires a causal connection or relationship between the use of the vehicle and the injury. ***Id.*** Nevertheless, "the causal relationship need not be proximate." ***Id.*** Although each case turns on its individual facts, "[t]he question to be answered is whether the injury 'originated from,' 'had its origin in,' 'grew out of,' or 'flowed from' the use of the vehicle." ***Id.***

The specific additional insured endorsement at issue in this case, and substantially similar endorsements, have been construed by courts in other jurisdictions on numerous occasions. For example, in ***Regal Constr. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA***, 930 N.E.2d 259, 262 (N.Y. 2010), the additional insured endorsement at issue provided coverage to an additional insured "only with respect to liability arising out of [the named insured's] ongoing operations." The Court interpreted the phrase "arising out of" to mean "originating from, incident to, or having connection with," which required "only that there be some causal relationship between the injury and the risk for which coverage is provided." ***Id.*** (citation omitted). An employee of the named insured sued the additional insured when he fell walking through the work site, and the Court determined that the additional insured was covered despite the allegations of negligence against it because "[t]he focus of the inquiry was 'not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained.'" ***Id.*** (quoting *Worth Constr. Co., Inc. v. Admiral Ins. Co.*, 888 N.E.2d 1043 (N.Y. 2008)).

In ***Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.***, 256 S.W.3d 660, 664 (Tex. 2008), the endorsement at issue provided additional insured coverage "with respect to operations performed by [the named insured] or on [its] behalf."[7] The Court recognized that some courts had adopted a "fault-based interpretation" of the phrase "arising out of operations," such that coverage is provided only if a named insured's wrongful act during the operation caused the injury. ***Id.*** However, the Court noted that this was not the prevailing view, and it declined to adopt the fault-based interpretation. ***Id.*** at 666. Instead, the Court interpreted the additional insured endorsement to require only "a causal connection or relation" between the event and the operations, not proximate cause or legal causation. ***Id.*** The Court reasoned that if the parties had intended to insure the additional insured for vicarious liability only, "language clearly embodying that intention was available," as the endorsement could have simply referred to vicarious liability or the negligence of the named insured. ***Id.*** Thus, the Court held that the additional insured in that case was provided with coverage for an injury to the named insured's employee, even if the additional insured's negligence alone caused the injury. ***Id.*** at 667.

In ***Mikula v. Miller Brewing Co.***, 701 N.W.2d 613, 621 (Wis. Ct. App. 2005), the Court construed a provision identical to the one before us, providing additional insured coverage "only with respect to liability arising out of [the named insured's] ongoing operations performed for that [additional] insured." The Court declined to read the provision

---

[7] The Court noted that several courts recognize there is no material difference between the common term "arising out of operations" and the term "with respect to operations." ***Evanston***, 256 S.W.3d at 664 n.7. As such, it reviewed several cases involving endorsements identical to the one before us, providing coverage "with respect to liability arising out of" the named insured's operations. ***Id.*** at 665.

as applying only to vicarious liability, concluding that nothing in the language of the policy indicated that the additional insured's coverage was limited solely to liability the additional insured might be exposed to as a result of the named insured's negligence. *Id.* Instead, the Court found the language "very broad" and explained, "The reasonable interpretation of this broad language indicates that the additional insured is covered for liability flowing from the named insured's ongoing process of work performed for the additional insured." *Id.* at 623. If the policy was intended to exclude coverage for liability arising from the additional insured's own negligence, the Court concluded, "it should and could have spelled out as much." *Id.*

The clear majority of cases construing endorsements similar to the one before us have concluded that "there need not be negligence alleged against the named insured for the additional insured to be covered." *Mikula*, 701 N.W.2d at 622; *see, e.g.*, *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So.2d 733, 736 (Fla. 1998) (stating that because the endorsement contained no limiting language, the additional insured was entitled to coverage for its own negligence arising out of the named insured's operations); *Federal Ins. Co. v. American Hardware Mut. Ins. Co.*, 184 P.3d 390, 395-96 (Nev. 2008) (acknowledging the majority rule and also concluding that the phrase "arising out of the named insured's operations" does not preclude coverage for the additional insured's own negligent acts); *Pulte Home Corp. v. American S. Ins. Co.*, 647 S.E.2d 614, 618-20 (N.C. Ct. App. 2007) (concluding that "liability arising out of [the named insured's] operations" does not limit coverage to vicarious liability); *Meadow Valley Contractors, Inc. v. Transcontinental Ins. Co.*, 27 P.3d 594, 597 (Utah Ct. App. 2001) (deciding that the phrase "liability arising out of [the named insured's] work" does not require that the named insured cause the damage); *Equilon Enters., LLC v. Great Am. Alliance Ins. Co.*, 132 P.3d 758, 761-63 (Wash. Ct. App. 2006) (interpreting "arising out of" broadly and recognizing the majority rule that negligence of the named insured is not required); *Marathon Ashland Pipe Line LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1240 (10th Cir. (Wyo.) 2001) (interpreting "arising out of" broadly and rejecting the argument that the additional insured must be no more than vicariously liable for the endorsement to apply); *see also* Windt, *Insurance Claims and Disputes 5th* § 11:30 (stating that only "a small minority of courts have held that a provision making a third party an insured for liability 'arising out of the named insured's operations' serves solely to make third parties insureds for their vicarious liability").

On appeal, Insurer asks us to adopt the minority view, citing a handful of cases which have held that additional insured provisions only cover vicarious liability. For instance, in *Davis v. LTV Steel Co., Inc.*, 716 N.E.2d 766, 769 (Ohio Ct. App. 1998), the Ohio Court of Appeals held that the "plain language" of an endorsement providing coverage to an additional insured "only with respect to liability arising out of [the named insured's] operations" was "intended to protect [the additional insured] from any liability for the

negligence of [the named insured's] employees." Thus, the Court interpreted the endorsement to provide coverage only in cases of vicarious liability. *Id.*

Next, Insurer relies on a federal district court case applying Maryland law, *G.E. Tignall & Co., Inc. v. Reliance Nat. Ins. Co.*, 102 F.Supp.2d 300, 306 (D. Md. 2000), which similarly found that a provision limiting additional insured coverage to liability arising out of the named insured's work was unambiguous and did not cover an additional insured for its own negligent acts. However, the United States Court of Appeals for the Fourth Circuit recently reached the opposite conclusion when applying Maryland law to an endorsement identical to the one before us in *Red Roof Inns, Inc. v. Scottsdale Ins. Co.*, 419 Fed. Appx. 325, 333 (4th Cir. (Md.) 2011). The Court stated that it was "not persuaded" by the reasoning of *G.E. Tignall* due to its failure to discuss applicable state law. *Id.* at 335 n.8. The Court cited Maryland case law explaining that the words "arising out of" must be afforded their common meaning, namely, "to mean originating from, growing out of, flowing from, or the like." *Id.* (citation omitted). Therefore, the Court determined that "a loose cause and result relationship," rather than proximate cause, was enough to satisfy the policy's "arising out of" requirement.[8] *Id.*

Finally, Insurer cites a case that involved an additional insured endorsement that is very different from the one before us, as it specifically provided additional insured coverage "only to the extent of liability resulting from occurrences arising out of negligence" of the named insured. *See Harbor Ins. Co. v. Lewis*, 562 F. Supp. 800, 802 (D.C. Pa. 1983).

Having reviewed numerous cases construing additional insured endorsements similar or identical to the one before us, we agree with the majority view that under a plain and common sense reading of a policy providing coverage to an additional insured "with respect to liability arising out of [the named insured's] ongoing operations performed for [the additional] insured," the additional insured's coverage is not limited to instances of vicarious liability for the negligence of the named insured. In our opinion, the fault-based interpretation of "arising out of your ongoing operations" simply reads a limitation into the contract that is unsupported by a plain reading of the policy. We do not equate the phrase "arising out of the named insured's ongoing operations" with "arising out of the named insured's negligence." As stated recently by our Supreme Court, "the insurer is essentially asking us to write a new contract for the parties in accordance with its idea of what the policy

---

[8] The facts in *Red Roof Inns* involved a security guard who was employed by a security company (the named insured) to provide security at a motel (the additional insured). *Id.* at 335. The security guard sued the motel after falling on a stairway while on duty. *Id.* The Court concluded that the injury "ar[ose] out of [the security company's] ongoing operations performed for [the motel]," irrespective of any negligence on the part of the motel. *Id.*

should have said. This we decline to do, as our duty is to construe and enforce the policy as written, not make a new contract for the parties on different terms." ***U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.***, 277 S.W.3d 381, 390 (Tenn. 2009). Had the parties intended to insure Ferrell for vicarious liability only, the policy could have easily referred to vicarious liability or specified whose negligence was covered and whose negligence was excluded from coverage.

Because the litigation involving Mr. Lancaster involves an injury to an Imperial Guard employee that occurred while the employee was on duty at Ferrell's premises providing services for Ferrell in furtherance of the contract between Imperial Guard and Ferrell, we conclude that Ferrell's alleged liability for the employee's injury arose out of Imperial Guard's ongoing operations performed for Ferrell, and, therefore, Ferrell was covered by the additional insured endorsement.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court granting summary judgment to Insurer and remand for further proceedings. Costs of this appeal are taxed to the appellee, Everest Indemnity Insurance Company, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.