
IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 4, 2017

## BULL MARKET, INC. v. ADEL ELRAFEI

### Appeal from the Circuit Court for Tipton County
### No. 7284    Joseph H. Walker, III, Judge

_____

### No. W2016-01767-COA-R3-CV

_____

A purchaser of property entered into an installment contract and signed a promissory note specifying the day on which monthly payments were to be made. The purchaser began making payments on different days of the months and the seller accepted these payments over a course of years. Over seven years after the contract was executed, the seller sought to declare the contract null and void because the purchaser failed to tender his payment on the day specified in the note. The trial court awarded the seller relief and granted it possession of the property. The purchaser appealed, and we reverse the trial court's judgment. We conclude the parties modified the terms of the promissory note through their course of conduct and that the purchaser did not breach the contract.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed

ANDY D. BENNETT, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and KENNY W. ARMSTRONG, JJ., joined.

Mark J. Grai, Memphis, Tennessee, for the appellant, Adel Elrafei.

Ross E. Webster, Memphis, Tennessee, for the appellee, Bull Market, Inc.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Bull Market, Inc. ("BMI") and Adel Elrafei executed a Contract for Deed (the "Contract") on January 1, 2009, in which Mr. Elrafei agreed to purchase a convenience store and fuel pumps from BMI for the sum of $300,000. The Contract specified that Mr.

Elrafei was to pay $15,000 at the closing and then pay the balance of $285,000 over the course of ten years as set forth in a promissory note. Paragraph 7 of the Contract provides:

> That Purchasers agree that in the event they:
>
> a. Fail to pay the monthly installments required by the promissory note within fifteen (15) days after due date;
>
> b. Violate any of the provisions of the Security Agreement;
>
> c. Fail to maintain the required policies of insurance;
>
> d. Fail to pay any city or county property taxes assessed against the property;
>
> Sellers may then, at their sole option, declare that this Contract is null and void without notice and that Sellers will retain all payments previously made hereunder by Purchasers as rents and liquidated damages. Then, in such event, Sellers shall give Purchasers written notice of default which shall be considered as cancellation of Purchasers' rights under this Contract for Deed. That [upon] cancellation of this Contract, Purchasers agree that they will surrender possession of the premises and furniture, fixtures, equipment, and inventory located at 510 Hwy 51 North, Covington, Tn 38019, to Sellers.

Mr. Elrafei executed a promissory note in the amount of $285,000 on an unspecified day in January 2009. In the note, Mr. Elrafei promised to pay BMI "monthly installments" in the amount of $3,022.87 beginning on February 1, 2009, "with future installments being due and payable on the 1st day of each succeeding month thereafter until principal and interest are paid in full." The promissory note identifies the maturity date as January 1, 2019.

The parties entered into a Fuel Supply Agreement on July 22, 2009. As part of this agreement, the parties agreed to reduce Mr. Elrafei's monthly payments to $1,500. Paragraph 26 of this agreement states:

> CONTRACT FOR DEED MODIFICATION. Both parties agree to change the terms of the Promissory Note associated with the Contract for Deed dated January 1, 2009. The new promissory note will replace the one date[d] 1/1/09.

Despite the language of paragraph 26, the parties did not replace the initial promissory note. Neither BMI nor Mr. Elrafei prepared another promissory note setting forth the

2

reduced monthly installment payments. Both parties agree, however, that BMI provided Mr. Elrafei with a modified amortization schedule that specified the monthly payments were to be in the amount of $1,500.

Mr. Elrafei made monthly payments to BMI, but the dates of the payments varied from month to month. The record shows that Mr. Elrafei made his monthly payments online, through BMI's bank. For the first eight months of 2015, BMI's bank account was credited with $1,500 on the following dates: January 16, February 18, March 13, April 16, May 18, June 16, July 16, and August 18.[1]

On August 18, 2015, BMI's attorney sent an e-mail to Mr. Elrafei terminating the Contract. The e-mail stated, in pertinent part:

> As of this date, Bull Market, Inc. has not received the August payment due under the Contract for Deed. Paragraph 7 of the Contract for Deed requires that the payment be received within 15 days of its due date, which is the 1st of each month. Bull Market, Inc. has chosen, as is its right under Paragraph 7, to declare the Contract for Deed null and void. Although no notice is required prior to deeming the Contract for Deed null and void, we are submitting this written notice of cancellation of the Contract for Deed. Paragraph 7 also states that Mr. Elrafei will surrender possession of the premises. Please advise as to whether Mr. Elrafei will tender possession of the premises by August 28, 2015. If not, we will move forward to obtain possession through the courts and seek attorney's fees for same.
>
> Bull Market, Inc. has no intention to accept any payments from Mr. Elrafei for the amounts that were due on August 1, 2015. Please do not attempt to make payment. Any payments received are deemed late and will not be accepted whether received or not.

BMI returned Mr. Elrafei's August payment on August 24. Once Mr. Elrafei learned that BMI had rejected his August online payment, he made a cash deposit of $1,500 into BMI's account on August 28, which BMI retained. BMI filed a Forcible Entry and Detainer Warrant with the Court of General Sessions in Tipton County on August 28, 2015. A trial was held on October 15, 2015, and judgment was entered for BMI. The court wrote: "Rent pd is to be kept by Owner as payment for occupancy that has occurred."

Mr. Elrafei appealed the case to circuit court, and that court held a trial on July 19, 2016. Mr. Elrafei testified on his own behalf and Reagan Burford, who was employed by BMI, testified on behalf of BMI. Mr. Burford testified that Mr. Elrafei made his

---

[1]BMI's record shows that Mr. Elrafei continued to make monthly payments each month through the time of trial, which was in July 2016, and that he was not in arrears for any month.

monthly payments "when he wanted to pay," that "several" payments were made after the fifteenth day of the month, and that Mr. Elrafei was "habitually late." Mr. Burford testified that in December 2012 Mr. Elrafei submitted his payment on the seventeenth day of the month. When Mr. Elrafei's attorney asked whether Mr. Burford declared Mr. Elrafei in default in December 2012 because that payment was late, Mr. Burford responded that he "didn't choose to at that time." In response to additional questions from Mr. Elrafei's attorney, Mr. Burford testified as follows:

> Q: Why was it August of 2015 that you decided you had enough after years, literally years, of late payments? Why was that?
>
> A: You know, I don't know what a year ago was, but I can tell you this. One, two, three, four, five, six in a row being late. So we just chose at that time - -
>
> . . . .
>
> We had just had enough.

Mr. Elrafei testified that he always made the payments by way of bank wire transfer and that he believed the payment date was the fifteenth day of the month. Mr. Elrafei testified that he always paid on time in accordance with his understanding that the payments were due on the fifteenth day of the month:

> Your Honor, I always make the payment from a bank wire transfer. I make it on the 15th, it go for the next business day. It happens 2016 the 15[th] match a certain day. So it will go for the next business day, which is the 17th.
>
> . . . .
>
> I pay it on the 15th. If I find it's a Saturday – Sunday, I will go back up and pay it on that Friday or Thursday, and it will hit their account on the 16th, 17th. Never happened it hit on the 19th, never happened.

The trial court entered an order on July 20, 2016, finding in favor of BMI. The court wrote, in pertinent part:

> The court finds that the terms of the note were amended by agreement of the parties to a monthly payment of $1,500.00. The note required payment on the 1st of the month.
>
> . . . .

4

There is no dispute that the August 2015 payment was not made on August 1, or within fifteen days after due date. The note waives demand and notice. Purchaser attempted payment eighteen days after due date.

Seller gave written notice of default, which shall be considered as cancellation of Purchasers' rights under the Contract for Deed. Purchasers agree that they will surrender possession. Sellers retain all payments.

The Court finds that under the terms of the Contract, Sellers are entitled to possession of the premises.

Mr. Elrafei appealed, arguing that the trial court erred by failing to find that the parties modified their agreement through their course of conduct and that the trial court should have concluded that, as modified, Mr. Elrafei's installment payments were not due until the fifteenth of the month.

## II. ANALYSIS

The resolution of this case depends on the interpretation of the parties' contracts. Contract interpretation involves an issue of law, which we review de novo. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009). We afford no presumption of correctness to the trial court's interpretation of contracts. *Maggart*, 259 S.W.3d at 703; *German*, 300 S.W.3d at 702.

After a contract is made, it may be modified by express agreement or by conduct that evidences the contracting parties' consent. *Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 611-12 (Tenn. Ct. App. 2011). A modification has been defined as "'a change to one or more contract terms which introduces new elements into the details of the contract, or cancels some of them, but leaves the general purpose and effect of the contract undisturbed.'" *Id*. (quoting *Constr. Crane & Tractor, Inc. v. Wirtgen Am., Inc.*, No. M2009-01131-COA-R3-CV, 2010 WL 1172224, at *10 (Tenn. Ct. App. Mar. 24, 2010) (further citation omitted)). A party's agreement to modify a contract "'need not be express, but it may be implied from a course of conduct.'" *Id.* at 612 (quoting *Constr. Crane & Tractor*, 2010 WL 1172224, at *10. The parties' course of conduct in carrying out the contract is the best evidence of their original intent. *Univ. Corp. v. Wring*, No. W2011-01126-COA-R3-CV, 2012 WL 4078517, at *6 (Tenn. Ct. App. Sept. 18, 2012) (citing *Long v. Langley*, W2001-01490-COA-R3-CV, 2002 WL 818224, at *5 (Tenn. Ct. App. Apr. 23, 2002). A new contract is created when a contract is modified, but the original contract is still in effect to the extent that its terms have not been modified. *Constr. Crane & Tractor*, 2010 WL 1172224, at *10.

Mr. Burford testified that Mr. Elrafei's December 2012 payment was made on December 17 and that Mr. Elrafei made late payments in 2013. Other than this

5

testimony, the record does not reveal the dates on which Mr. Elrafei tendered his monthly payments in the years 2009, 2010, 2011, 2012, 2013, or 2014. No evidence was introduced suggesting that Mr. Elrafei missed any payments. BMI's bank transaction report for the year 2015 shows that BMI accepted Mr. Elrafei's payments after the fifteenth of the month in January, February, April, May, June, and July. The payments were credited to BMI's account on the eighteenth of the month in February, May, and August. Mr. Elrafei testified that as a result of an altercation with BMI in December 2012, he began submitting his installment payments on or near the fifteenth of the month. In reliance on BMI's ongoing acceptance of his payments on or after the fifteenth of the month, Mr. Elrafei followed the same course of conduct in August 2015, when BMI's account was credited with his $1,500 payment on August 18. Mr. Burford testified that BMI's failure to receive Mr. Elrafei's August 2015 payment on or before August 15 is what caused BMI to initiate the forfeiture proceedings.

We conclude, based on the evidence, that the parties modified the promissory note with regard to the monthly amount, the maturity date, and the day of the month when the payments are due. When BMI and Mr. Elrafei entered into the Fuel Supply Agreement on July 7, 2009, they expressly agreed to change the monthly amount from $3,022.87 to $1,500 and to change the maturity date from January 2019 to January 2038. They modified the day of the month when the payments are due through their course of conduct, which the evidence reveals began as early as 2012 and continued through the time BMI initiated suit. As a result of the parties' course of conduct, the due date for the monthly payments has been changed from the first to the fifteenth day of each month. In accordance with paragraph 7 of the Contract, BMI may not declare the Contract "null and void" unless Mr. Elrafei fails to tender his monthly payment within fifteen days following the fifteenth of the month. *See Lively v. Drake*, 629 S.W.2d 900, 903-04 (Tenn. 1982) (concluding payors were led to believe irregular payments would continue to be accepted without acceleration and that agreement was modified by parties' course of conduct).

This case is distinguishable from *Dacus v. Weaver*, 1988 WL 138918 (Tenn. Ct. App. Dec. 28, 1988), upon which BMI relies. In *Dacus*, not only did the payors remit their payments late, they skipped payments entirely on several occasions. *Dacus*, 1988 WL 138918, at *1-2; *see also Jerles v. Phillips*, No. M2005-1494-COA-R3-CV, 2006 WL 2450400, at *9 (Tenn. Ct. App. Aug. 22, 2006) (holding contract terms were not modified where payors could not show course of conduct was established and accepted by payee). No evidence was introduced in this case that Mr. Elrafei missed any payments from January 2009 through July 2016, when the trial took place. Finally, we note that "equity abhors a forfeiture" and that equity "construe[s] a contract against the party seeking to enforce a forfeiture." *Knapp v. Robbins Props., Inc.*, 1985 WL 4912, at *2 (Tenn. Ct. App. Dec. 31, 1985).

6

## III. CONCLUSION

The trial court's judgment awarding possession of the property to BMI is reversed and remanded for further proceedings consistent with this opinion. Costs of this appeal shall be taxed to the appellee, Bull Market, Inc., for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE