IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE,
June 8, 2022 Session

## BARBARA ANN SHELTON ET AL. v. MARY EDEN

**Appeal from the Chancery Court for Robertson County**
**No. CH-18-445; CH-18-446      Laurence M. McMillan, Jr., Chancellor**

_____

### No. M2021-01080-COA-R3-CV

_____

The dispositive issue in this appeal is whether a third promissory note constituted a novation of two earlier promissory notes. Following a bench trial, the court found the defendant "carried her burden of proof to establish that the third note was a novation and cancelation of the previous two notes." Plaintiffs appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

B. Nathan Hunt and Macayla F. Heath, Clarksville, Tennessee, for the appellants, Peggy J. Bunn, Michael S. Farmer, Timothy L. Farmer, Barbara A. Shelton, and Estate of Rudolph Scott Farmer.

James B. Johnson, Nashville, Tennessee, for the appellee, Mary F. Eden.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

This is the second appeal in an action among siblings regarding three promissory notes allegedly owed to their deceased father. Without the knowledge of the other siblings, Mary F. Eden ("Defendant") and her father, John R. Farmer ("Decedent"), executed three promissory notes on September 10, 2009; April 7, 2011; and July 31, 2011 ("the First Note," "the Second Note," and "the Third Note," respectively).

The terms for the First Note were as follows: Defendant agreed to repay Decedent $150,000 plus interest at the rate of 6.00% per annum over a ten-year term in equal installments of $1,665.31 due on the first day of each month. The First Note also provided: "No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties."

The terms for the Second Note, executed on April 7, 2011, were as follows: Defendant agreed to repay Decedent $100,000 plus interest at the rate of 5.00% per annum. The Second Note was to be paid by equal installments of $1,887.12 on the tenth day of each month over a five-year term.

In June 2011 and prior to the execution of the Third Note, Decedent met with his attorney, Clyde Richert, Defendant, and her brother, John T. Farmer ("Tom Farmer"), for "will and estate planning" purposes.[1] Thereafter, Mr. Richert summarized what was discussed in the meeting in a letter addressed to Decedent dated June 28, 2011. Mr. Richert's letter reiterated his recommendation that Decedent and Defendant consolidate the September 2009 and April 2011 promissory notes in a third note. The letter states in pertinent part:

> I would suggest that any money [Defendant] owed be set up on a new note payable in monthly payments for 5 years at prime interest rate, but with the payments set lower as if the note was over a longer period.

On July 31, 2011, the Third Note was executed by both Decedent and Defendant with the following terms: Defendant agreed to repay $212,919.56[2] plus interest at the rate of 4.00% per annum. The Third Note was to be paid by equal installments of $2,155.71 on the fifteenth day of each month over a ten-year term.[3] Notably, Defendant later testified that, when the Third Note was executed, she did not receive any additional funds from Decedent, as she had already received the $212,919.56 that was consolidated into the Third Note.

Decedent died on October 29, 2015. His Last Will and Testament was admitted to probate on November 24, 2015. Defendant and her brother, Tom Farmer, were appointed as co-executors of the estate, and all seven of Decedent's children were named as equal beneficiaries of his estate.

A letter with a proposed settlement agreement was sent on January 29, 2016, by Mr. Richert to the beneficiaries of Decedent's estate. The proposal included Defendant's offer

---

[1] It appears that Defendant and Tom Farmer were included in the "will and estate planning" meeting because they were named co-executors of Decedent's estate.

[2] Defendant testified that the Third Note was for $212,919.56 instead of $250,000 because Decedent reduced the principal balance of the original loans by $38,000 for a vehicle purchase.

[3] All three notes were prepared by Angela Chowning, a bank officer with Commerce Union Bank.

to satisfy the Third Note by paying the estate the outstanding principal balance.[4] Her siblings declined the offer.[5] Defendant later satisfied the Third Note by paying the principal balance plus accrued interest.

In November 2017, the Estate of John R. Farmer (hereinafter, "the Estate") filed suit against Defendant alleging that she was in breach of the First Note. Then in December 2017, the Estate commenced a separate action for breach of the Second Note.[6]

Both the actions were commenced in the Circuit Court for Robertson County and subsequently transferred to the Chancery Court for Robertson County. Thereafter, the court entered an order permitting five of Decedent's children—Barbara Shelton, Rudolph Farmer, Michael Farmer, Timothy Farmer, and Peggy Duffer (collectively, "Plaintiffs")— to be substituted as plaintiffs and allowing the Estate to withdraw from the proceedings. The remaining sibling, Tom Farmer, declined to participate in the suit.

Defendant then moved for summary judgment, claiming a novation on the ground that the First and Second Notes had merged into the Third Note, which had been satisfied in full. Plaintiffs opposed the motion, arguing that each note represented a separate obligation. The court granted Defendant's motion, and the first appeal followed. *See Shelton v. Eden*, No. M2019-01295-COA-R3-CV, 2020 WL 3078069 (Tenn. Ct. App. June 10, 2020).

In the first appeal, this court reversed the grant of summary judgment, finding that Defendant had "failed to meet her burden to show that she was entitled to judgment as a matter of law." *Id.* at *1. Thus, the matter was remanded for an evidentiary hearing. A bench trial was held on the issue of whether the Third Note novated the First and Second Notes.

Following the trial, the chancery court determined that Defendant "carried her burden of proof to establish that the third note was a novation and cancelation of the previous two notes." In support of this decision, the court made the following findings of fact:

---

[4] Plaintiffs contend they were unaware of the First and Second Notes at this time.

[5] Shortly thereafter, Defendant and her brother Tom Farmer were replaced as the co-executors of the Estate due to a conflict of interest over the question of a novation extinguishing the earlier promissory notes.

[6] The third promissory note was the subject of another proceeding. *See In re Est. of Farmer*, No. M2019-01335-COA-R3-CV, 2020 WL 1891178 (Tenn. Ct. App. Apr. 16, 2020) (mem. op.).

a)	The transactions at issue in this case are between family members;

b)	There is not sufficient proof in the record that the Defendant received funds contemporaneously with the execution of the third note; however, there is proof that she received funds when she executed the two prior notes;

c)	The principal balance owing on the first two notes was substantially equal to the obligation contained in the third note;

d)	The Defendant testified that she only borrowed $250,000.00 from her father;

e)	Two of the Defendant's brothers testified that their father told them that he had loaned $250,000.00 to the Defendant;

f)	The [Decedent's] longtime accountant testified that [Decedent] only loaned the Defendant $250,000.00;

g)	The [Decedent's] personal attorney in correspondence dated June 28, 2011 confirmed his conversation with the deceased the previous day when he wrote,

> I would suggest any money [Defendant] owed be set up on a ***new note payable*** in monthly payments for 5 years at prime interest rate, but with payments set lower as if the note was over a longer period of time. . . . (emphasis added); and,

h)	The July 31, 2011 note satisfied the writing requirement contained in the September 2009 note.

Based on these facts and circumstances, the trial court held that the Third Note constituted a novation and dismissed Plaintiffs' complaints.

This appeal followed.

## ISSUES

The issues presented for our review, as we have restated them, are:

1. Whether the execution of the Third Note constituted a novation of the First and Second Notes; and

2. Whether novation of the First Note was precluded by the provision in the note that "[n]o modification or waiver of any terms of this Agreement shall be allowed unless by written agreement signed by both parties."

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, "appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted).

While there is no bright-line test to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2579 (3d ed. 1998)).

Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

"Novation is the substitution of a new obligation for an existing one or the substitution of a third party for the existing obligor." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 890 (Tenn. 2019) (citing 30 Williston on Contracts § 76:1 (4th ed.) (May 2019 Update); 58 Am. Jur. 2d Novation § 1 (May 2019 Update) (defining "novation" as "a mutual agreement between the parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation or by the substitution of one debtor or of one creditor for another" (footnote omitted))). In Tennessee, our courts use the terms "novation" and "substituted contract" synonymously. *Id.* As our Supreme Court has explained in more detail:

The effect of a novation is that the original contract becomes a nullity, and the new agreement determines the rights and duties of the parties. The parties

cannot revert back to the extinguished contract even if one party later breaches the new agreement.

The party seeking to establish a novation must show "(1) a previously valid obligation, (2) the agreement of all parties to a new contract, (3) the extinguishment of the old contract, and (4) a valid new contract." The most important factor in determining whether a novation has occurred is the intent of the parties, which must be clear and definite.

A novation is never presumed. The party asserting a novation bears the burden of proof.

The parties need not express in written form their intent to create a novation, and the parties need not state orally or in writing the rescission of the original contract. Novation does not require express words such as "novation," "discharge," "extinguish," "settlement," or "release."

The intent to create a novation may be inferred from the facts and circumstances surrounding the transaction and from the conduct of the parties. Although the parol evidence rule prohibits the use of extrinsic evidence to vary, contradict, or supplement the terms of an integrated contract, it is appropriate to consider evidence of surrounding facts and circumstances to determine the intent of the parties.

Thus, whether the parties intended a novation is ordinarily a question of fact that the trier of fact will determine. The parties' intent about novation is only established, as a matter of law, when the evidence is such that reasonable minds cannot differ about the effect of the new agreement.

*Id.* at 890–92 (footnote omitted) (citations omitted).

In any contract, the "cardinal rule" is to determine the intent of the parties. *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002) (citing *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999)). Regarding the intent of the parties, Defendant testified that the Third Note was created to replace the previous two notes. This establishes the intent of one-half of the parties to create a novation. Because Decedent was unavailable to testify, the evidence of Decedent's intent is limited to the "facts and circumstances surrounding the transaction." *See TWB Architects, Inc.*, 578 S.W.3d 891. Defendant introduced into evidence a letter from Decedent's attorney, Mr. Richert, who had been Decedent's attorney for ten years or more. As the letter summarized, Mr. Richert recommended that Decedent substitute a "new note" for any money that Defendant owed. The Third Note was executed by Decedent and Defendant 33 days later.

In addition, three witnesses—Tom Farmer, the sibling who is not a party to this action; Ervin Brown, Decedent's accountant; and Defendant—testified that they knew the aggregate amount Defendant borrowed was $250,000, the total of the two previous notes. Defendant further testified that she received no additional funds with the execution of the Third Note. Plaintiffs offered no proof to contradict these facts.

Moreover, Plaintiffs provided no direct evidence to contradict the letter from Mr. Richert or the testimony of Tom Farmer, Mr. Brown, or Defendant concerning Decedent's intent for the Third Note to be substituted for the First and Second Notes. To the contrary, Barbara Shelton, one of the plaintiffs, testified that she was "not at all" involved in her father's finances and that the only knowledge she had of the notes at issue came from the notes themselves, which she did not learn of until after his death. Her sister, Ms. Duffer, testified that she never had power of attorney over her father, she had no awareness of her father's "day-to-day finances," and she was not involved in and had no knowledge of the preparation of the promissory notes. Ms. Duffer also testified that she had no knowledge about the intention of either party or the facts surrounding the Third Note. Their brother Timothy Farmer also admitted that he knew nothing of Decedent's intent with the promissory notes.

However, Tom Farmer testified that his father told him the total amount loaned was $250,000:

> Q. All right. So your father told you that he loaned her $250,000, correct?
>
> A. Yes.
>
> Q. He never told you that he loaned her $462,000, did he, Mr. Farmer?
>
> A. No.

As noted earlier in this opinion, the trial court made specific findings of fact that led to its conclusion that a novation had occurred. In pertinent part, the court found:

> a)    The transactions at issue in this case are between family members;
>
> b)    There is not sufficient proof in the record that the Defendant received funds contemporaneously with the execution of the third note; however, there is proof that she received funds when she executed the two prior notes;
>
> c)    The principal balance owing on the first two notes was substantially equal to the obligation contained in the third note;

d)     The Defendant testified that she only borrowed $250,000.00 from her father;

e)     Two of the Defendant's brothers testified that their father told them that he had loaned $250,000.00 to the Defendant;

f)     The [Decedent's] longtime accountant testified that the deceased only loaned the Defendant $250,000.00;

g)     The [Decedent's] personal attorney in correspondence dated June 28, 2011 confirmed his conversation with the deceased the previous day when he wrote,

> I would suggest any money [Defendant] owed be set up on a ***new note payable*** in monthly payments for 5 years at prime interest rate, but with payments set lower as if the note was over a longer period of time. . . . (emphasis added) . . . .

As the foregoing reveals, the trial court made more than sufficient findings to disclose the steps by which it reached its ultimate conclusion. *See Lovlace*, 418 S.W.3d at 35. Moreover, and importantly, having reviewed the transcript of the evidence, we find that the evidence does not preponderate against the trial court's findings of fact that a novation had occurred. *See Kelly*, 445 S.W.3d at 692.

## II. WRITING REQUIREMENT

The trial court also concluded that the Third Note satisfied the writing requirement contained in the First Note. Plaintiffs contend this was error.

The First Note stated that "[n]o modification or waiver of any terms of this Agreement shall be allowed unless by written agreement signed by both parties." "Generally, Tennessee courts follow the rule that 'allows contracts to be orally modified even if the contracts specifically state that the contract can only be modified in writing.'" *Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 611 (Tenn. Ct. App. 2011) (quoting *Markow v. Pollock*, No. M2008-01720-COA-R3-CV, 2009 WL 4980264, at *8 (Tenn. Ct. App. Dec. 22, 2009)); *see Coop. Stores Co. v. United States Fid. & Guar. Co.*, 137 Tenn. 609, 195 S.W. 177, 180 (1917) ("There can be no controversy but that a written contract may be modified after it is made by the express words of the parties in writing, as in the instant case, as well as by parol."). So, "[e]ven where the written contract prohibits oral modifications of the agreement, oral alterations will still be given effect if otherwise valid, as 'men cannot tie their hands or bind their wills so as to disable them from making any contract allowed by law, and in any mode in which it may be entered into.'" *Id.* (quoting

*In re Est. of Nelson*, No. W2006-00030-COA-R3-CV, 2007 WL 851265, at *18 (Tenn. Ct. App. Mar. 22, 2007)).

"A party's agreement to a modification need not be express, but may be implied from a course of conduct; this is true even where the agreement expressly specifies, as in this case, that the parties may only modify the agreement in writing." *Id.* at 611–12 (quoting *Constr. Crane & Tractor, Inc. v. Wirtgen Am., Inc.*, No. M2009-01131-COA-R3-CV, 2010 WL 1172224, at *10 (Tenn. Ct. App. Mar. 24, 2010)).

We begin our analysis of this issue by noting that the Third Note satisfies two of the modification requirements, those being that the modification be made by "written agreement" and be "signed by both parties." This is because the Third Note is a written agreement that was signed by Decedent and Defendant. Further, the intent to modify the First Note so that it would be a nullity and replaced by the Third Note is established by the same evidence that proved the novation of the First and Second Notes.

As discussed earlier, the letter from Decedent's long-time attorney, Mr. Richert, recommended that Decedent substitute a "new note" for any money that Defendant owed, and the Third Note was executed by both parties 33 days later. In addition, Tom Farmer, Mr. Brown, and Defendant all testified that the aggregate amount borrowed was $250,000, the total of the two previous notes, and there is testimony that Defendant received no additional funds with the execution of the Third Note. Moreover, Plaintiffs provided no direct evidence to contradict Defendant's evidence of the parties' intent for the Third Note to be substituted for the First and Second Notes. Accordingly, we find no error with the trial court's determination that the writing requirement in the First Note was satisfied.

Based on the foregoing evidence, we affirm the trial court's determination that the Third Note satisfied the writing requirement contained in the First Note. We also conclude that reasonable minds cannot differ that the Third Note represented the intent of Decedent and Defendant to nullify the obligations in the First and Second Notes and replace them with those stated in the Third Note. *See TWB Architects, Inc.*, 578 S.W.3d at 892. As a consequence, we affirm the trial court in all respects.

## III. ATTORNEYS' FEES

Although not raised as an "issue," Defendant contends that Plaintiffs' appeal is frivolous and seeks to recover "just damages" for having to defend against such an appeal. Tennessee Code Annotated § 27-1-122 authorizes this court to award such damages against the appellant if we determine that the appeal is frivolous or that it was taken solely for delay. The statute, however, is to "be 'interpreted and applied strictly to avoid discouraging legitimate appeals.'" *Town & Country Jewelers, Inc. v. Trotter*, 538 S.W.3d 508, 517 (Tenn. Ct. App. 2017) (quoting *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001)). A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. *Wakefield*, 54 S.W.3d at 304. Although we affirmed the trial court's ruling, we

do not find the appeal to be devoid of merit or rising to the level of a frivolous appeal. Accordingly, the request that we impose sanctions is denied.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Plaintiffs/Appellants, jointly and severally.


_____
FRANK G. CLEMENT JR., P.J., M.S.