IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 15, 2020 Session

## CRAIG WILLIAMS ET AL. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-14-0777     JoeDae L. Jenkins, Chancellor**

_____

### No. W2019-00851-COA-R3-CV
_____

Appellant was injured in an accident involving a vehicle owned by Lexus of Memphis and insured under a policy issued by Appellee insurance company. The at-fault driver entered into a rental agreement with Lexus of Memphis for use of the subject vehicle. After a jury entered a verdict in favor of Appellant against the at-fault driver, Appellant sought to collect the judgment under a policy issued by Appellee. The trial court held that the at-fault driver, as a renter of the vehicle, was exempt from coverage under the policy. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Matthew V. Porter, Memphis, Tennessee, for the appellants, Craig Williams and Melissa Williams.

M. Clark Spoden and Kathryn Grundy, Nashville, Tennessee, and Timothy M. Thornton, Encino, California, for the appellee, Tokio Marine America Insurance Company.

## OPINION

### I. Background

The underlying car accident occurred on May 18, 2008. Craig Williams was seriously injured when his vehicle collided with a vehicle driven by Kreston Smith. The

vehicle driven by Mr. Smith was owned by Avenir Partners d/b/a Lexus of Memphis ("Lexus of Memphis"). On May 13, 2008, Mr. Smith brought his personal vehicle to Lexus of Memphis for service. While at the dealership, Mr. Smith signed a written "Rental Agreement" to drive a 2008 Lexus ES Sedan. After signing the Rental Agreement, Mr. Smith saw a 2008 Lexus RX 350 SUV in the queue of "loaner" vehicles. Mr. Smith advised a Lexus of Memphis employee that he was considering purchasing a used Lexus SUV vehicle and inquired whether he could drive the RX 350 SUV instead of the 2008 Lexus ES 350 Sedan. Lexus of Memphis agreed to Mr. Smith's request to substitute the RX 350 SUV for the ES 350 Sedan and provided Mr. Smith a yellow copy of the written Rental Agreement with the vehicle reference number (436) for the RX 350 SUV substituted for the vehicle reference number (446) for the ES 350 Sedan. On this yellow copy, in the box marked "Vehicle Number," the original typewritten number "446" has a line drawn through it (i.e., "~~446~~") and the handwritten number "436" with a circle around it is written in the same box. Mr. Smith was driving the RX 350 SUV (Lexus of Memphis vehicle number 436) at the time of the subject accident. After Mr. Smith left the dealership in the RX 350 SUV, a Lexus of Memphis employee wrote the word "SWAP" and the number "436" at the top of the original white written Rental Agreement, which Mr. Smith had signed prior to leaving the dealership. In addition, after Mr. Smith left, Lexus of Memphis made certain entries into its internal computer system to confirm that the vehicle used by Mr. Smith was the Lexus RX 350 SUV.

Following the accident, Mr. Williams and his wife Melissa (together, "Appellants") filed suit against Mr. Smith and others. On February 7, 2014, a jury found that Mr. Smith was 100% at fault for the accident. The jury returned verdicts in favor of Mr. Williams in the amount of $2,000,000.00 and in favor of Mrs. Williams in the amount of $50,000.00. At the trial, Mr. Smith testified that he understood he was using the RX 350 SUV because it was part of the "loaner" program. In his deposition, Mr. Smith conceded that his operation of the RX 350 SUV was governed by the Rental Agreement. The jury rendered a verdict in favor of Lexus of Memphis, finding that Lexus of Memphis was not liable for the injuries sustained by Mr. Williams. As is relevant to this appeal, the jury found that Mr. Smith was not test driving the RX 350 SUV at the time of the accident. Mr. Smith subsequently filed bankruptcy.

The instant appeal arises from Appellants' complaint for declaratory judgment, which was filed on May 15, 2014 in the Shelby County Chancery Court ("trial court"). The complaint was filed against several corporate defendants, some of which were subsequently dismissed. The remaining defendant, Tokio Marine American Insurance Co. ("Tokio"), is the Appellee in this appeal. Tokio issued three automobile policies (i.e., Primary Policy, Rental Excess Policy, and Excess Policy) to Toyota Motor North America, Inc. for the policy period of April 1, 2008 to April 1, 2009. In said policies, the Named Insured Endorsement as amended includes "All Participating Toyota and Lexus Dealerships and Subsidiaries." Lexus of Memphis was a named insured under these policies. By their complaint, Appellants sought a determination as to whether Mr. Smith

was an insured under any of the policies issued by Tokio.

After the trial court denied Tokio's motion for summary judgment, the declaratory judgment action proceeded to hearing on December 4, 2018. As discussed in further detail below, by order of April 17, 2019, the trial court held that: (1) the Tokio policies were neither ambiguous nor illusory; (2) the exclusions in the policies were not precluded under the Tennessee Financial Responsibility Law of 1977; (3) "[a]s a permissive user of the service loan car under a written rental agreement, Kreston Smith was not an additional insured under the Primary Policy, Rental Excess Policy, or Excess Policy;" and, as such, (4) the Tokio policy would not cover the judgment entered against Mr. Smith in the underlying jury case. Appellants appeal.

## II. Issues

Appellants raise four issues for review as stated in their brief:

1.      Whether there was a valid rental agreement involving the vehicle at issue in the underlying accident.
2.      Whether the relevant insurance policies are patently ambiguous.
3.      Whether the relevant insurance policies appear to be illusory.
4.      Whether the insurance policies run afoul of Tennessee statutory laws.

## III. Standard of Review

This case involves a dispute over the scope of coverage under an insurance contract, which presents a question of law involving the interpretation of contractual language. *Clark v. Sputniks LLC*, 368 S.W.3d 431, 44 (Tenn. 2012); *see also* *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) ("The interpretation of a written agreement is a question of law and not of fact."). A trial court's conclusions of law are subject to *de novo* review with no presumption of correctness. *See* *Regions Bank v. Thomas*, 532 S.W.3d 330, 336 (Tenn. 2017). Issues related to the admission or exclusion of evidence at trial are reviewed for an abuse of discretion. *Id.* (quoting *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)).

Courts interpret insurance policies using the same tenets that guide the construction of any other contract. *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012) (citing *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000)). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Id.* (quoting *Clark*, 368 S.W.3d at 441). The insured has the burden to prove that a loss falls within the insuring agreement. *Mass. Mut. Life Ins. v.*

- 3 -

*Jefferson*, 104 S.W. 3d 13, 22 (Tenn. Ct. App. 2002). An insurance company has the burden of proving that an exclusion in its policy applies to a claim. *Interstate Life & Accident Ins. Co. v. Gammons*, 408 S.W.2d 397, 399 (Tenn. Ct. App. 1966). Once an insurance company demonstrates that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion. *Standard Fire Ins. Co. v. Chester O'Donley & Assocs.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998). The insuring agreement sets the outer limits of an insurer's contractual liability. If coverage cannot be found in the insuring agreement, it will not be found elsewhere in the policy. *Id.* at 7. "Exclusions help define and shape the scope of coverage, but they must be read in terms of the insuring agreement to which they apply. Exclusions can only decrease coverage; they cannot increase it." *Id.* at 7-8. Exclusions should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose. *Id.* at 8.

## IV. Rental Agreement

As discussed above, while at the Lexus of Memphis dealership, Mr. Smith signed a "Rental Agreement." In its April 17, 2019 order, the trial court held that, "Mr. Smith was operating the Subject Auto under a written rental agreement and was thus excluded from coverage by the Amendatory Endorsement to Tokio Marine's primary policy." We will discuss the specific provisions of the insurance policies below. However, as an initial matter, Appellants challenge the trial court's holding that Mr. Smith was operating the RX 350 SUV under a written Rental Agreement. As noted above, after signing the rental agreement to drive the ES 350 Sedan, Mr. Smith requested to change the "loaner" vehicle to the RX 350 SUV. Lexus of Memphis obliged, and the Rental Agreement was modified with the RX 350 SUV number 436 substituted for the ES 350 Sedan number 446. This change was noted on the yellow copy of the Rental Agreement that was given to Mr. Smith before he left the dealership. On appeal, Appellants contend that because Lexus of Memphis either failed to execute a new Rental Agreement specifying that Mr. Smith was loaned the RX 350 SUV, or because Lexus of Memphis unilaterally changed the vehicles on the Rental Agreement without Mr. Smith's consent, there is no written agreement governing Mr. Smith's use of the RX 350 SUV. This argument rests on whether Mr. Smith and Lexus of Memphis achieved a modification of the original Rental Agreement. Concerning that question, the trial court held that:

> 28. Kreston Smith then drove the RX 350 off the Lexus of Memphis dealership lot with the yellow copy of the written rental agreement with the reference number crossed out for the ES 350 and the vehicle reference number for the RX 350 handwritten on the yellow copy of the rental agreement.
> 29. In so doing, Kreston Smith assented to the modification memorialized in writing on the yellow copy of the written rental agreement by driving off the dealership lot with the Lexus RX 350.

In reaching its conclusion that Mr. Smith assented to the modification of the Rental Agreement, the trial court relied on evidence admitted in the underlying lawsuit, to-wit:

71. At the trial in the Underlying Case, Mr. Smith testified he had visited Lexus of Memphis sometime prior to the May 13, 2018 visit to inquire about a possible purchase of a used Lexus SUV vehicle. However, Lexus of Memphis disputes this account. Mr. Smith further testified that on the day of the Subject Accident, and after signing the Rental Agreement, he advised a Lexus of Memphis employee—who served as a valet in the garage that he was considering purchasing a used Lexus SUV vehicle. Mr. Smith saw a Lexus RX 350 in the queue of vehicles lined up to be used as loaners by Lexus of Memphis customers, and asked to drive a Lexus RX 350 SUV instead of the ES 350 Sedan. The Lexus of Memphis employee testified at the trial (i) that he did not recall being told that Mr. Smith was considering buying a used Lexus SUV, (ii) that no customer had ever asked to use as loaner car to test-drive, and (iii) that he was not authorized to allow someone to road-test a loaner vehicle. Shortly after signing the Rental Agreement, Lexus of Memphis provided Mr. Smith the Lexus RX 350 SUV and gave him a yellow copy of the written Rental Agreement. The vehicle reference number (436) for the RX 350 was substituted for the vehicle reference number (446) for the ES 350 sedan. Agreed Trial Exhibit 7.

72. No separate written Rental Agreement for this SUV was tendered to Mr. Smith, but Mr. Smith was given a yellow copy of the original Rental Agreement. On this yellow copy, in the box marked "Vehicle Number," the original typewritten number "446' has a line drawn through it . . . and the handwritten number "436" with a circle around it is written in.

73. The number 446 is the identification number used by Lexus of Memphis to identify the ES 350 Sedan while the number 436 is the number used to identify the RX 350 SUV. Trial Exhibit 13, Stip. Fact 14.

***

76. Mr. Smith testified at trial that he understood he was in th[e] RX 350 because it was part of the Loaner Program that he signed up for by signing the Rental Agreement. Mr. Smith also testified in his deposition in this case that he assumed his operation of the RX 350 was governed by the Rental Agreement that he signed. Trial Exhibit 13, Stip. Fact 12.

On appeal, Appellants contend that the trial court erred in admitting the stipulated evidence from the jury trial concerning the facts surrounding Mr. Smith and Lexus of Memphis' agreement to swap the ES 350 Sedan for the RX 350 SUV. In the absence of

the foregoing parol evidence, Appellants contend that there is insufficient evidence to support the trial court's conclusion that the original Rental Agreement was successfully modified to cover Mr. Smith's use of the RX 350 SUV. In its order, the trial court first held that "because [Appellants] were not parties to the written rental agreement between Kreston Smith and Lexus of Memphis, [Appellants] may not use the parol evidence rule to exclude extraneous evidence regarding [the Rental] [A]greement." The trial court further held that, "Parol evidence is admissible to explain such conduct [i.e., modification of the Rental Agreement], and therefore, [Appellants'] objections are overruled."

We first address the trial court's decision to allow parol evidence concerning the changes to the Rental Agreement. Under Tennessee law, the parol evidence rule "'applies only between the parties to the written contract and strangers cannot raise the question of the admissibility of parol evidence to vary a written contract.'" *Consumers Ins. USA v. Smith*, No. E2002-00724-COA-R3-CV, 2002 WL 31863300, at \*6 (Tenn. Ct. App. Dec. 23, 2002) (quoting *Evans v. Tillett Bros. Constr. Co.*, 545 S.W.2d 8, 12 (Tenn. Ct. App. 1976)). As such, Tennessee courts have consistently disallowed use of the parol evidence rule by an entity or individual that was not a party to the written contract at issue. *See, e.g., Lancaster v. Ferrell Paving*, 397 S.W.3d 606, 613 (Tenn. Ct. App. 2011) (holding that an insurance company, who was not a party to the disputed contract, could not use the parol evidence rule to exclude facts surrounding an oral modification of the disputed contract, which was made by and between a security services company and a property owner); *Consumers Ins. USA*, 2002 WL 3186330 at \*6. (holding that an insurer could not block the admission of evidence concerning a disputed date on a bill of sale entered by and between the insured and a third party); *Evans*, 545 S.W.2d at 12 (citations omitted) ("The parol evidence rule applies only between the parties to the written contract and strangers cannot raise the question of the admissibility of parol evidence to vary a written contract."); *Isabell v. Aetna Insur. Co., Inc.*, 495 S.W.2d 821 (Tenn. Ct. App. 1972) (holding that the parol evidence rule could not be used to exclude extraneous evidence regarding a written contract between a builder and a property owner). In each of the foregoing cases, the gravamen of the ruling concerning the applicability of the parol evidence rule rests on the fact that the parties attempting to use the parol evidence were "strangers" (i.e., not parties) to the contract at issue. Here, the disputed Rental Agreement was made by and between Mr. Smith and Lexus of Memphis. Neither appellant is a party to this agreement. As such, Appellants may not use the parol evidence rule to exclude evidence regarding the Rental Agreement between Mr. Smith and Lexus of Memphis. The trial court did not err in overruling Appellants' objection to the admission of parol evidence.

Although Appellants may not rely on the parol evidence rule to exclude evidence from the underlying lawsuit, this fact does not, *ipso facto*, mean that parol evidence was properly admitted in this case. Tennessee courts have held that parol evidence can be used to show acceptance of terms in a contract and to define non-obvious terms in an agreement. *See, e.g., Jones v. Brooks*, 696 S.W.2d 885, 886 (Tenn. 1985) (finding that

parol evidence could be considered where a contract provision was subject to two reasonable interpretations); ***Hillard v. Franklin***, 41 S.W.3d 106, 112 (Tenn. Ct. App. 2000) (holding that parol evidence can be used to show acceptance); ***Coble Systems, Inc. v. Gifford Co***., 627 S.W.2d 359, 362 (Tenn. Ct. App. 1981) (noting that parol evidence may be used to clarify latent ambiguities in written agreements); ***Patterson v. Davis***, 192 S.W.2d 227, 229 (Tenn. Ct. App. 1945) (noting that acceptance may be demonstrated by parol evidence even for contracts where the statute of frauds applies and a writing is required). Furthermore, this Court has explained that, although

> the parol evidence rule prevents contracting parties from using extraneous evidence to alter or vary the terms of an integrated, unambiguous contract[,] *[s]ee **GRW Enters., Inc. v. Davis***, 797 S.W.2d 606, 610-11 (Tenn.Ct.App.1990) (citing ***Jones v. Brooks***, 696 S.W.2d 885, 886 (Tenn.1985))[,] [t]he rule does not . . . prevent the use of extraneous evidence to prove a separate agreement made after the written one. ***Id.*** (citing ***Brunson v. Gladish***, 174 Tenn. 309, 125 S.W.2d 144, 147 (Tenn.1939)). Parol evidence is admissible to prove a subsequent modification to a written contract, as it is itself a separate contract. ***Id***.

***In re Estate of Nelson***, 2007 WL 851265, at *17; *see also **Smith v. Hi-Speed, Inc.***, 536 S.W.3d 458, 471 (Tenn. Ct. App. 2016) (allowing evidence of conduct occurring **after** the execution of a written lease agreement to show the basis for modification of a written contract) (emphasis added); ***Schwartz v. Diagnostix Network All., LLC***, No. M2014-00006-COA-R3-CV, 2014 WL 6453676, at *10 (Tenn. Ct. App. Nov. 17, 2014) *perm. app. denied* (Tenn. April 10, 2015) (citing ***Brunson v. Gladish***, 125 S.W.2d 144, 147 (Tenn. 1939)) ("[E]vidence of an agreement made subsequent to the execution of the written agreement, even though it may have the effect of adding to, changing, modifying, or altogether abrogating the parties' written agreement, is not barred by the parol evidence rule.").

We can glean from the foregoing authority that parol evidence is admissible to: (1) show a party's acceptance of the terms of a contract; (2) evidence a modification of the original agreement; and (3) clarify vague or ambiguous terms in the contract. In the instant case, parol evidence was properly admitted to: (1) establish Mr. Smith's acceptance of the Rental Agreement; (2) evidence the modification of the original Rental Agreement to include the RX 350 SUV instead of the ES 350 Sedan; and (3) clarify the ambiguity concerning the numbers Lexus of Memphis used to reference the RX 350 SUV and the ES 350.

Concerning Mr. Smith's acceptance of the Rental Agreement, the evidence establishes that Mr. Smith received a yellow copy of the written Rental Agreement. The parol evidence also establishes that the number 446 (i.e., Lexus' number for the ES 350 Sedan) was struck and the number 436 (i.e., Lexus number for the RX 350 SUV) was

written on the yellow copy of the Rental Agreement. Mr. Smith left the Lexus dealership in the RX 350 SUV. Parol evidence establishes that Mr. Smith had in his possession the modified yellow copy of the rental agreement when he left the dealership. Furthermore, Mr. Smith testified that he understood that his use of the RX 350 SUV was governed by the Rental Agreement. Based on this evidence, the trial court held that, "Kreston Smith assented to the modification memorialized in writing on the yellow copy of the written rental agreement by driving off the dealership lot with the Lexus RX 350 . . . ."

Concerning the modification of the Rental Agreement to cover the RX 350 SUV, "[a] modification to a contract is a change to one or more contract terms which introduces new elements into the details of the contract, or cancels some of them, but leaves the general purpose and effect of the contract undisturbed." *Lancaster*, 397 S.W.3d at 611. In Tennessee, parties to a written contract may modify their agreement in writing or orally, so long as both parties consent to such modifications. *Id.* A party's agreement to a modification may be implied from a course of conduct and need not be in writing. *Id.* at 611; *see also* ***R. Mills Contractors, Inc., v. WRH Enterprises, LLC***, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002); ***Jerry T. Beech Concrete Contractors, Inc. v. Powell Builders***, ***Inc.***, 2001 WL 487574, at *2 (Tenn. Ct. App. May 9, 2001).

Here, it is undisputed that Mr. Smith and Lexus of Memphis entered into a written Rental Agreement with regard to the 2008 Lexus ES Sedan, Vehicle Number 446. This was a written Rental Agreement prepared by the service advisor and signed by Kreston Smith. Lexus of Memphis retained the white original of the written Rental Agreement and gave Mr. Smith the yellow copy of the written Rental Agreement. Mr. Smith then requested to drive the RX 350 SUV. A Lexus of Memphis employ took the sedan keys back, gave Mr. Smith the keys to an SUV, and crossed out, on the yellow copy of the Rental Agreement, the reference number of the sedan – "446" – and wrote in "436" immediately beside the crossed out reference in the "the vehicle number" portion of the yellow copy of the Rental Agreement. Mr. Smith then left the dealership in the RX 350 SUV with the modified yellow copy of the Rental Agreement.

After Mr. Smith left the dealership, Lexus of Memphis recorded the exchange of vehicles with the notation "SWAP 436" on the signed original of the Rental Agreement (i.e., the white copy) and noted the modification in its computer records. On appeal, Appellants contend that any modification of the Rental Agreement was made unilaterally by Lexus of Memphis, and, thus, no written rental agreement exists for the RX 350 SUV. This argument is not supported by the evidence. Based on the parties' conduct, Mr. Smith requested the RX 350 SUV and took the yellow copy of the Rental Agreement when he left the dealership in that vehicle. The mere fact that Mr. Smith left the dealership in the RX 350 SUV indicates his consent to drive that vehicle. Furthermore, his testimony that his use of the "loaner" vehicle was governed by the Rental Agreement indicates his consent to the inclusion of the RX 350 SUV on that document. The fact that Lexus of Memphis entered the notation "Swap 436" on its copy of the Rental Agreement

and also changed the vehicle in its computer system does not evidence a unilateral modification of the Rental Agreement. Rather, these actions constitute Lexus of Memphis' internal bookkeeping to evidence Lexus of Memphis and Mr. Smith's agreement to modify the Rental Agreement. Parol evidence of the requested modification is admissible because it occurred after Mr. Smith signed the original Rental Agreement. See *Schwartz*, 2014 WL 6453676, at *10; *GRW Enter.*, 797 S.W.2d at 610; *Hi-Speed, Inc.*, 536 S.W.3d at 471.

Finally, as discussed above, the Rental Agreement that Mr. Smith signed references number 446 for the Lexus ES 350 Sedan. The yellow copy of the Rental Agreement, which was given to Mr. Smith, has the number 446 marked out, with vehicle reference 436 handwritten in its place. The yellow copy of the Rental Agreement does not reference the specific vehicles to which these numbers refer. Accordingly, the written Rental Agreement contains a latent ambiguity, which may be resolved through parol evidence. A "latent ambiguity" that may be removed by parol evidence is one resulting not from the words themselves, but from the "ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language . . . ." *Cobble Systems, Inc. v. Gifford Co.*, 627 S.W.2d 359, 362 (Tenn. Ct. App. 1981) (citing *Teague v. Sowder*, 114 S.W. 484 (Tenn. 1908)). Because Lexus of Memphis' use of numbers to identify its vehicles presents a latent ambiguity in the context of this case, the trial court properly overruled Appellants' objection regarding the admissibility of parol evidence to determine that the use of "436" on the Rental Agreement was a reference to the RX 350 SUV that Mr. Smith was driving at the time of the accident. *See Jones* 696 S.W.2d at 886; *In re Estate of Nelson*, 2007 WL 851265; *Gifford Co.*, 627 S.W.2d at 362.

Based on the foregoing analysis, the trial court did not err in allowing parol evidence concerning Mr. Smith and Lexus of Memphis' modification of the original signed Rental Agreement to substitute the RX 350 SUV for the ES 350 Sedan. Following modification, the Rental Agreement clearly covered the RX 350 SUV, and Mr. Smith was using that vehicle as a renter at the time of the subject accident. We now turn to the question of whether the Tokio insurance policies cover Mr. Smith under these circumstances.

## V. Tokio Insurance Policies

As noted above, Tokio issued three policies to Toyota Motor North America, Inc. for the relevant policy period of April 1, 2008 to April 1, 2009. The Named Insured Endorsement (as amended) includes, "All Participating Toyota and Lexus Dealerships and Subsidiaries." It is undisputed that Lexus of Memphis is a named insured under the Tokio policies. We now turn to the provisions of each of the subject policies:

## A. The Primary Policy (CA 859000403)

The Primary Policy contains both a Common Declarations Page and a Business Auto Form Declarations page. Section II of the Business Auto Policy states that Tokio will pay "all sums an insured legally must pay as damages to which the insurance applies caused by an accident and resulting from the ownership, maintenance or use of a covered auto." The Business Auto Policy defines "covered auto" (for liability coverage) as, "Only those 'autos' you own that are 'enrolled' in the TOYOTA RENT A CAR (TRAC) SYSTEM and the LEXUS CUSTOMER CONVENIENCE SYSTEM (LCCS)." (Emphases in original). "You" is defined as the Named Insured and, so, would include Lexus of Memphis. "Enrolled" is defined, in part, as a vehicle listed in the monthly LCCS VIN tape. It is undisputed that the RX 350 SUV at issue here was enrolled in the LCCS system.

Under the "Who is An Insured" section, the Business Auto Policy provides:

The following are "insureds":

a. You for any covered "auto"
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow **except**:
   (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
   (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
   (4) Anyone other than your "employees," partners (if you are in a partnership), member (if you are in a limited liability company), or a lessee or borrower of any of their "employees," while moving property to or from a covered "auto."
   (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

(emphasis added). In its April 17, 2019 order, the trial court held that these "five exceptions do not apply to Kreston Smith." From the plain language of the policy, we agree. However, the Amendatory Endorsement Form, CA9 99 001 07 97, at section B, adds a sixth exception to the foregoing list of covered permissive users. The additional language excepts from coverage, "Anyone who rents a covered 'auto' from a named insured under a written 'rental agreement' or operates, drives or in any way uses a

- 10 -

covered 'auto' rented under such 'rental agreement'." The Amendatory Endorsement Form defines the term "Rental Agreement," in relevant part, as "an automobile rental or lease agreement whereby a named insured rents an auto to a renter for a term less than 30 days. . . ." The Amendatory Endorsement further provides that:

> For "bodily injury," death or "property damage" assumed by a named insured under a "rental agreement" for rental of an auto in a named insured's daily "auto" rental business, when the "rental agreement" is in compliance with all the terms and conditions of the rental agreement.

Appellants cite the foregoing provision, arguing that this "provision states that a renter, under a rental agreement, is covered." Accordingly, Appellants argue that this provision

> [u]nequivocally, on its face . . . states that a renter, under a rental agreement, is covered. Tokio insists that Mr. Smith was a renter under the rental agreement. But, Tokio also contends that the foregoing provision, placed in context actually means that a renter is not covered. Its very argument renders the amendatory endorsement inherently ambiguous.

Appellants further argue that the Primary Policy is ambiguous based on the fact that "the exclusionary sections . . . are found in separate areas of Tokio's primary insurance policy and are not clearly or conspicuously made available to both parties of the insurance agreement. This is because the amendments are not integrated into the policy itself, and contain ambiguous and contradictory language." This argument ignores the fact that the Amendatory Endorsement specifically states that the additional exception, i.e., for "[a]nyone who rents a covered 'auto' from a named insured under a written 'rental agreement' or operates, drives or in any way uses a covered 'auto' rented under such 'rental agreement'," should be "added" to "subparagraph b," of the Primary Policy. As set out above, subparagraph b of the Primary Policy sets out five enumerated exceptions. Based on the instruction in the Amendatory Endorsement, i.e., that the additional exception be added at "subparagraph b," the only interpretation is that the additional exception for renters is meant to be added to this list of exceptions. The trial court held that:

> [t]he interpretation argued by [Appellants] is simply implausible. It would require the Court to ignore specific language in the Amendatory Endorsement that directs the reader where to insert the new provision. The Amendatory Endorsement specifically states that the language is "added" to "subparagraph b," which says that "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow **except** . . . ." [Appellants] argument would eliminate language that appears plainly in the policy and such construction is not reasonable or warranted.

- 11 -

(footnote omitted; emphasis in original). As such, the trial court held that, "The plain meaning of Tokio Marine's Primary Policy [] is that the Amendatory Endorsement added an additional provision excepting renters under written Rental Agreements from coverage." From our review of the plain language of the policy, we agree. The Amendatory Endorsement clearly expands the exclusions provision of the Primary Policy to also exclude "[a]nyone who rents a covered 'auto' from a named insured under a written 'rental agreement' or operates, drives or in any way uses a covered 'auto' rented under such 'rental agreement.'" In this regard, the policy is neither illusory nor ambiguous.

Having determined above that Mr. Smith was operating the RX 350 SUV under the terms of the Rental Agreement, he is clearly excepted from coverage under the Primary Policy's exclusion for persons "who rent[] a covered auto . . . under a written rental agreement." In short, Mr. Smith was a renter and not a covered permissive user of the subject vehicle. Accordingly, we affirm the trial court's holding that Mr. Smith "falls within the scope of [the exclusion provisions of the Primary Policy] because Mr. Smith rented a covered auto under the terms of a written rental agreement that was orally modified by the parties [to cover the RX 350 SUV]. . . . Therefore, Mr. Smith is not a covered permissive user under this policy provision."

### B. Rental Excess Policy (CA 859000503)

In relevant part, the Rental Excess Policy provides:

A. In addition to all of the exclusions contained in the "primary insurance," this insurance does not apply to any of the following:

1. The "renter" or a permitted user of a covered "auto" under the "rental agreement."
2. Any other person or organization using a covered "auto" with the permission of the "renter," including any liability imposed upon the "renter" or a permissive user when such liability arises out of the use, possession or control of a covered "auto" by a "renter" or permissive user.

Like the Primary Policy, the Rental Excess Policy specifically excludes "renter[s]," who are operating a covered auto under a "rental agreement." For the reasons discussed above, Mr. Smith meets the criteria for this exclusion. In addition, the Excess Rental Policy provides that, "We will pay all sums an 'insured' legally must pay as damages in excess of the 'primary insurance' . . . . We will not provide coverage if the 'loss' is not covered under the 'primary insurance.'" Relying on these provisions, the trial court held that Mr. Smith, as a renter, was not only excluded under the plain language of the Rental Excess Policy, but also concluded that because "Mr. Smith is not covered under the

Primary Policy, there is no coverage under the Rental Excess Policy." We agree. The language in the Rental Excess Policy is unambiguous. Mr. Smith, a renter, is specifically excluded from coverage. Furthermore, having determined above that Mr. Smith is excluded from coverage under the Primary Policy, he is also excluded under the limiting language of the Rental Excess Policy, i.e., "We will not provide coverage if the 'loss' is not covered under the 'primary insurance.'"

## C. Excess Policy (E 010 2072)

The Excess Policy provides, in relevant part:

> The following is added to the *Additional Exclusions*:
>
> The policy does not apply to:
> Liability of any rental customer of a rented auto whether or not said rental customer is operating the auto with the permission of a named insured.

(emphasis in original). The Excess Policy further provides that "[e]xcept as may be otherwise stated in this Excess Policy, the coverage provided by this Excess Policy is subject to all the agreements, limitations, exclusions, conditions . . . of the 'underlying insurance.'" Having determined that Mr. Smith is excluded from coverage under both the Primary Policy and the Rental Excess Policy, under the plain language of the Excess Policy, he is also specifically excluded from coverage thereunder.

## V. Compliance with Tennessee Financial Responsibility Law

As discussed above, while at the Lexus of Memphis dealership, Mr. Smith signed a "Rental Agreement." Paragraph 5 on the reverse side of the Rental Agreement states:

> **Vehicle Insurance**. We have procured a Rental Auto Coverage Policy of Insurance which provides coverage for damages because of bodily injury or property damage caused by an accident resulting from the use of the Vehicle by an authorized driver, as provided in Paragraph 1, who has not engaged in a prohibited use, as provided in Paragraph 2, at the time of the loss (and not otherwise). THE LIMITS OF LIABILITY AVAILABLE FOR PAYMENT OF A LOSS WHICH OUR RENTAL AUTO COVERAGE POLICY COVERS IS EQUAL TO THE MINIMUM REQUIREMENTS OF ANY APPLICABLE STATE FINANCIAL RESPONSIBILITY LAW OR OTHER SIMILAR LAW OR STATUTE. Unless required by law, the policy does not include No-Fault, Supplemental No-Fault, Uninsured/Underinsured Motorist coverage or other optional coverages. . . . You warrant that all drivers identified in Paragraph 1 above have a valid and collectible automobile liability insurance policy in effect,

which provides coverage for the driver's use and operation of the Vehicle we rent to you. By signing this agreement you agree to be bound by all of the provisions and terms found in our Rental Auto Coverage Policy of Insurance. You agree that all policy provisions which exclude coverage contained therein apply to you as renter, and to any driver you authorize or permit to drive the Vehicle.

(emphasis in original). Appellants contend that paragraph 5 of the Rental Agreement is contrary to the Tennessee Financial Responsibility Law of 1977, Tennessee Code Annotated section 55-12-101, *et seq.* ("TFRL"). At section 55-12-122, the TFRL provides:

(a) An owner's policy of liability insurance shall designate, by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby granted; and shall insure the person named therein, and any other person using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, which are set forth in § 55-12-102.

(b) An operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon the insured by law for damages arising out of the use by the insured of any motor vehicle not owned by the insured within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.[1]

At section 55-12-102(12)(C), the TFRL further provides:

(12) "Proof of financial responsibility" or "proof of financial security" means:

(A)(i) If proof is required after December 31, 1989, but prior to January 1, 2009, such proof means:

(a) A written proof of liability insurance coverage provided by a single limit policy with a limit of not less than sixty thousand dollars ($60,000)

---

[1] We note that the TFRL applies only to primary policies with Minimum Financial Responsibility Limits and does not apply to excess policies. Tenn. Code Ann. § 55-12-122(f).

applicable to one (1) accident;

(b) A split-limit policy with a limit of not less than twenty-five thousand dollars ($25,000) for bodily injury to or death of one (1) person, not less than fifty thousand dollars ($50,000) for bodily injury to or death of two (2) or more persons in any one (1) accident, and not less than ten thousand dollars ($10,000) for damage to property in any one (1) accident;

(c) A deposit of cash with the commissioner in the amount of sixty thousand dollars ($60,000); or

(d) The execution and filing of a bond with the commissioner in the amount of sixty thousand dollars ($60,000);

(ii) An insured holding a policy that complies with the insurance requirements of the financial responsibility law on December 31, 1989, will not be deemed to be in violation of the law if the policy meets the limits specified in subdivisions (12)(A)(i)(a)-(d) as of the first renewal after that date;

In their brief, Appellants argue that

Tokio has not proffered any evidence of a bond, cash deposit or certificate of self-insurance. The only possible compliance of record is through the policies at issue. If Tokio is correct that the primary policy's amendatory endorsement excludes coverage when the vehicle's use is subject to a "rental agreement," then the Proof of Financial Responsibility statutes would be violated. . . .

Appellants' argument overlooks the fact that the TFRL contemplates certain exceptions for rental vehicles. Specifically, section 55-12-106(10) of the TFRL provides:

Any person licensed and engaged in the business of renting or leasing motor vehicles to be operated on the public highways shall be required only to furnish proof of financial ability to satisfy any judgment or judgments rendered against the person in the person's capacity as owner of the motor vehicle, and shall not be required to furnish proof of its financial ability to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident[.]

In its April 17, 2019 order, the trial court correctly explained that the TFRL

draws a distinction as to renters and lessors of automobiles and other businesses that provide automobiles to the public, and other automobile owners; and between "renter risks" and "owner risks." The concern to have the automobile insured in those circumstances is, in common experience,

- 15 -

resolved by those businesses requiring a member of the public to carry liability insurance sufficient to meet the requirements of the [TFRL]. Those businesses must insure their own exposure (e.g. use by officers and employees of such a business) (the "Owner Risk"). The customers insure their own exposure . . . .

The trial court's analysis is in line with the Tennessee Supreme Court's holding in *Martin v. Powers*, 505 S.W.3d 512, wherein it explained, in relevant part, that

> Section 55-12-106(10) [of the TFRL] recognizes that a car rental company . . . faces two distinct classes of risks arising from the operation of its fleet of rental vehicles. The first class of risks, which we shall refer to as "Owner Risks," includes those accidents that may occur from the operation of [a rental company's] vehicle by [a rental company's employee] while in the course of her employment, or that may occur from the negligent maintenance of its vehicles . . . . The second class of risks, which we shall refer to as "Renter Risks," includes those accidents that may arise from the operation of one of [the rental company's] vehicles by one of its rental customers. As to Renter Risks, section 55-12-106(10) of the [TFRL] specifically exempts [the rental company] from demonstrating proof of financial security.

*Martin*, 505 S.W.3d at 534-25.

Contrary to Appellants' argument, the TFRL does not require Lexus of Memphis to "furnish proof of its financial ability to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident[.]" Tenn. Code Ann. § 55-12-106(10). Rather, the TFRL only requires Lexus of Memphis to "furnish proof of financial ability to satisfy any judgment or judgments rendered against [it] in [its] **capacity as owner** of the motor vehicle." *Id.* Furthermore, Lexus of Memphis' requirements under the TFRL may be fulfilled "by policies of one (1) or more insurance carriers which policies **together** meet these requirements." Tenn. Code Ann. § 55-12-122 (emphasis added). As set out above, the Rental Agreement between Mr. Smith and Lexus of Memphis clearly satisfies the requirements of the TFRL in that Lexus of Memphis warrants that it has "procured a Rental Auto Coverage Policy of Insurance which provides coverage for damages because of bodily injury or property damage caused by an accident resulting from the use of the Vehicle by an authorized driver," and that "the limits available for payment of a loss . . . is equal to the minimum requirements of any applicable state financial responsibility law . . . ." The plain language of the Rental Agreement covers Lexus of Memphis' financial responsibility requirement, i.e., its "Owner Risks." As to the "Renter Risks," in signing the rental agreement, Mr. Smith warranted "that all drivers identified in Paragraph 1 . . . have a valid and collectible automobile liability insurance policy in effect, which provides

coverage for the driver's use and operation of the Vehicle we rent to you." Together, Mr. Smith's policy and Lexus of Memphis' policy satisfy the requirements of the TFRL concerning rented vehicles. Tenn. Code Ann. § 55-12-122.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Craig Williams and Melissa Williams, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE